IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>SYED ABBAS ALI NAQVI,<br><br>          Appellant,<br><br>    and<br><br>TAWISH NAQVI,<br><br>          Respondent. | No. 87150-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Syed Naqvi appeals from the orders entered in the dissolution of his marriage to Tawish Naqvi. He asserts that numerous errors related to the trial court's management of time during trial, division of property, and entry of several orders require reversal. We affirm in part, reverse in part, and remand for entry of findings.

FACTS

Syed Naqvi and Tawish Naqvi[1] were married in India in 2010, and the couple lived together in Washington starting in 2011. The couple have two minor children. Syed filed a petition for dissolution in July 2022 and Tawish filed a response the following September.

---

[1] Because the parties share the same last name, we use their first names for clarity. No disrespect is intended.

Roughly a year and a half later, on March 14, 2024, Syed filed a motion to compel Tawish to answer his interrogatories and requests for production and for attorney fees. Syed claimed in his motion that he sent his initial discovery requests to Tawish in November 2022 and had received only "partial answers" in January 2023 that were supplemented later in September and November of that year. Despite this, Syed asserted that Tawish had not fully responded to all of his discovery requests. A few days later, on March 19, Syed filed a motion to continue the trial date.

Tawish's response to the motion to compel followed on March 20 wherein she countered that Syed had failed to hold a CR 26(i) conference as required and the filing and service of the motion to compel was untimely. Tawish averred that she had provided discovery but Syed was simply unsatisfied with her responses and the material she had turned over. Tawish's response also detailed her attempts to hold a discovery conference and Syed's repeated failure to appear at the agreed date and time. On March 22, Tawish filed her written objection to Syed's motion to continue the trial date and set out the procedural history of the case in great detail. She further noted that Syed had already successfully moved to continue the trial once previously, disputed Syed's claims regarding outstanding discovery and asserted he mischaracterized many of the procedural facts of the litigation in his motion and sought an award of attorney fees for having to respond to his motion for continuance.

On March 26, a judge denied Syed's motion to continue the trial and reserved any ruling on Tawish's request for attorney fees for determination by the

trial judge. On April 3, a court commissioner entered an order that denied Syed's motion to compel. The commissioner found that Syed "had over a year, since the filing of this matter, to conduct discovery, and prepare his case for trial" and had "failed to have a CR[ ]26(i) [conference] with [Tawish's] counsel before filing the [m]otion to [c]ompel." The order further stated that the commissioner did not "have the authority" to grant Syed's motion to compel because Syed had not held a CR 26(i) conference before filing his motion. Finally, the commissioner found that Tawish had produced "substantial responses" to Syed's discovery requests.

The case proceeded to a bench trial conducted over six days in May 2024. The trial court heard testimony from the guardian ad litem (GAL) appointed in the case to investigate allegations of domestic violence and other matters and to make a recommendation for the parenting plan. The GAL testified to the content and methods of his report, as well as his recommendation to the court. Syed called Iftakhar Mehmood and Iftakhar Wasi who both testified to his strengths as a parent and criticized Tawish. Mehmood testified through an Urdu interpreter which used much more trial time than anticipated and resulted in the substitution of the initial interpreter with another. Tawish called the children's nanny who testified to Tawish's parenting and an immigration attorney who testified to issues around Syed's work visa. Syed and Tawish also testified.

On August 1, 2024, the trial court entered the final parenting plan, child support order, final divorce order, and findings and conclusions about a marriage. The parenting plan contained provisions regarding decision making, the residential schedule, and international travel. The child support order named Syed as the

obligor and Tawish as the obligee, ordered Syed to pay past due support and expenses related to childcare and medical support, and imputed Syed's income for its determination of his monthly support obligation. The final divorce order, supported by the findings and conclusions, directed Syed to pay Tawish approximately $10,000 in attorney fees based on a finding of his intransigence, gave Tawish a finite period of time to refinance the home in order to stay in it, and awarded each party their separate property.

Syed timely appealed.

ANALYSIS

I.    Management of Time During Trial

Syed first avers that the trial court abused its discretion when it placed limitations on the time for his cross-examination of Tawish and later refused to extend trial for an additional day. He specifically contends that these restrictions violated his right to due process and the error was not harmless. He argues that his counsel was not able "to show that Tawish concealed and wasted over $124,000 in community funds she did not account for in violation of temporary orders, along with other suspect transactions." Tawish responds that the trial court did not abuse its discretion as to time management during trial and this assignment of error is premised on Syed's mischaracterization of what actually occurred at trial. Tawish is correct.

We review "a trial judge's courtroom management decisions for abuse of discretion" as "[t]rial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially." *In re Marriage of Zigler*, 154

Wn. App. 803, 815, 226 P.3d 202 (2010). "Trials must be fair but they need not be perfect." *Id.* The rules of evidence expressly confer broad authority on trial judges to manage time as it pertains to witnesses.

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

ER 611(a). In a recent opinion of this court, we identified a non-exclusive list of factors to be considered when we review the trial court's management of time during trial by imposition or enforcement of time limits for the examination of witnesses. *See Stocker v. Univ. of Wash.*, 33 Wn. App. 2d 352, 361, 561 P.3d 751 (2024). These are:

> (1) whether the trial court appropriately considered the parties' own time estimates for examining witnesses in allocating trial time;

> (2) whether time is allocated equitably based on which party has the burden of proof on pertinent claims and defenses;

> (3) whether the aggrieved party timely objects to the imposed time limits and provides a rationale for why the limits are inadequate;

> (4) whether the time limits are announced sufficiently in advance of trial and the trial court tracks time during trial to avoid unfair surprise;

> (5) whether the trial court allows a party additional time upon a suitable offer of proof or unforeseen circumstances in the examination of witnesses; and

> (6) whether there is a reasonable inference from the record that the aggrieved party's improvident use of time caused the purported need for additional time.

*Id.* We proceed to the merits of Syed's assignment of error with these factors in mind.

A. Record of Time Management at Trial

On the first day of trial, the judge inquired as to the expected duration and specifically asked, "Are the parties in agreement this should be roughly a three-day trial?" Syed's counsel responded,

> Your Honor, no. I believe the parties believe, at least we need four days, but I—I'm pretty confident that we can't finish in four days, because my experience is parties themselves in these matters need more than a day for testimony, if that is possible, so I think, Your Honor, is aware of the witness I guess we need five days, but I think at least we are in agreement we need four.

The trial judge then asked for Tawish's position, and her counsel stated,

> Then get it done in four days Your Honor, I estimate—I mean, aside from my client, the GAL, the rest of [the] witnesses are relatively short in nature, and I think that perhaps if the court did inquire into the witnesses, [Syed] attempts to propose they could also be cut and we don't need to hear from people who never met my client.

The trial court then concluded the discussion,

> All right. Well, this was initially set for 3 to 4 days and this judge is scheduled to go into criminal hearings next Monday, so obviously we should do everything we can to take care of this trial and complete it within the four days available to us, because otherwise it is not clear if I could find coverage to take the criminal hearings calendars for Monday and proceed on trial on Monday or have to in a worse [sic] case scenario set a date out to resume trial. Obviously, I am not going to initially make inquiry whether or not there are witnesses that cannot be cut. The attorneys know their case better [sic] I do. If testimony becomes redundant, I will accept an objection to that respect, but I will respect that each witness placed on the witness list is important.

Later that same day, before taking an afternoon recess, the trial judge made a request of the parties,

> [A] few things as we contemplate how to use our time in the afternoon and the next few days. I was just made aware about ten minutes ago, although perhaps I should have assumed this was

> coming that the—at least some of the witnesses that a party wishes to call are going to have interpreter needs in the language they need. My assumption is those are at least some of [Syed's] witnesses, but I will check with [Tawish]; do you also anticipate you need interpretation assistance?

Tawish answered in the negative. The trial court then advised the parties as to the particular timing considerations inherent in the use of interpreters.

> Interpretation, as I am sure any counsel who has worked with interpreters in trials before, also takes time. Essentially *you at least double whatever you anticipate that witness' testimony would take if they were speaking their native tongue to one that can understand their native tongue, because of the interpretation*. So, I am beginning to understand why there might be some concern this trial could balloon beyond four days based on the pace we are going so far.
> That is not by any means to tell [c]ounsel how to present their case, but I do think there has been room for additional efficiency that maybe we have not used so far in the questions to the guardian ad litem.

(Emphasis added.) The remaining time on May 7, approximately one hour and 30 minutes, was used to finish the GAL's testimony and to begin Syed's direct examination.

Trial resumed on May 8, and Syed began by introducing Mehmood's testimony through an Urdu interpreter in order to provide foundation evidence regarding bank documents Mehmood had procured for Syed in India for their eventual admission and Mehmood's observations of Tawish's parenting when the couple had traveled to India for a visit. After some communication difficulties between Mehmood and the interpreter became apparent, the trial judge requested that Syed's counsel rephrase the questions posed to the witness.

> I would strongly recommend [c]ounsel simplify her questions. These compound—I think it would be difficult for a native speaker to understand, but for an interpreter to trying [sic] to translate these questions is not going to be efficient. It really should be subject, verb,

interrogatory is what we are looking for, as simple as possible to get the point across and certainly no compounds.

The trial judge repeated this admonishment after Mehmood and the interpreter continued to struggle on direct examination. Eventually, Syed, an Urdu speaker himself, noted through counsel that there were significant issues with the interpreter, requested a new interpreter, and expressed concern that this would delay the trial into the following week.

> THE COURT: Why aren't we finishing this week?
>
> [COUNSEL FOR SYED]: It is quite possible. I think my client's testimony will last through the morning tomorrow would be my guess, including cross[-]examination and the other party, so that is getting into a half a day remaining for that—for all the witnesses that [Tawish] may have. And my guess is we may not complete without this issue. In any case, obviously we're at the [c]ourt's mercy as to—
>
> THE COURT: I am—what am I giving mercy for? Is there a concern to the interpreter's accuracy?
>
> [COUNSEL FOR SYED]: Yes, that is the problem.

Tawish, also an Urdu speaker, confirmed through her counsel that she had observed at least one instance of an incorrect interpretation.

The trial judge again emphasized that Syed needed to avoid asking the witness compound questions. The interpreter agreed that there were difficulties and attributed them to the witness giving long compound answers to the questions. While Mehmood continued to try to testify through the interpreter, the trial court ultimately elected to excuse the interpreter over concerns of inaccuracies and resume Mehmood's testimony the following day. After the interpreter was dismissed, the trial court cautioned Syed's counsel against spending too much time on Mehmood's further direct examination because few relevant facts had

- 8 -

been elicited by that point, despite the amount of time spent on his testimony.

Toward that end, the trial court stated,

> I will allow additional questions into the circumstances surrounding those facts, if [c]ounsel believes additional context was omitted by the interpreter. But I have to make a very firm and pleading request to the parties in the interest of time, because everyone knows, and I certainly cited yesterday, using the best of interpreters is going to be an extremely time-consuming venture.
>
> Certainly, I think that the directing attorney has the benefit of knowing what that witness is going to testify to based on what either their prior interviews of that witness, or what their client tells them the witness is expected to say. My plea is to both of you, to please formulate as much of your questioning as you can in advance. Be prepared to ask concise, pointed questions that will allow us to make the best use of interpreter time, because we are now in the position of having three interpreter witnesses for tomorrow.
>
> I am not . . . immediately inclined to schedule additional trial time weeks, or worse even months in advance. I can't resume this trial within the next two weeks if we go beyond Friday, and I don't think it is to the part[ies'] benefit that we have a large span of time between days of trial, so I do see substantial room for additional preparation and efficiency when it comes to questioning witnesses, and that falls to the attorneys to effectively use their client's time and the [c]ourt's time while in court.
>
> I am going to be pressing the part[ies] if I feel there are pauses that prior preparation or consideration might have prevented. I am going be pressing them to push through those pauses.

The remainder of that afternoon of trial, about two hours and 40 minutes, was spent on Syed's direct examination.

On the third day, May 9, Mehmood and Wasi both testified during the morning session. The afternoon session was again dedicated to Syed's direct examination, which lasted roughly two hours and 20 minutes. Before recessing, the trial court reviewed the case schedule:

> Tomorrow [Tawish] is going to get an opportunity to cross[-]examine [Syed]. Now, I had indicated that [Syed's] case needed to be over by 10:00 a.m. tomorrow. I am not indicating that cross[-]examination needs to conclude at that point. I think it's likely that we are going to

exceed the four days in terms of trial, just looking at where we are at. And if we are even attempting to give [Tawish] an equal amount of time to what [Syed] received, then there is just no way to expect that not only would [Tawish] complete her case in less than a day tomorrow, that we also move to closings. . . . I have been attempting I think to share with the part[ies] where my particular concerns are over the course of the first three days of trial, but quite frankly, there is still a lot of work to be done, and I don't feel like we have made three days['] worth of progress. Some of that is not the part[ies'] fault, because certainly we had some issues with technology and interpreters, but again, I think some real thought has to be put into how to precisely elicit the information that is important to the [c]ourt prior to attempting to do it in open court, rather than—because there is [sic] a lot of documents here.

On May 10, the fourth day of trial, Tawish cross-examined Syed for approximately two-and-a-half hours. Syed again raised concerns about his ability to fully present his case, given the amount of trial time remaining, and further asserted that Syed's counsel had not been able to question him on issues that were not being raised on cross-examination. The trial judge provided the following summation in response to Syed's concerns:

Choices were made about how the first three days of trial and their time were [sic] utilized. And out of a desire for equity, we've fallen into the arrangement we have.

Obviously, you're going to have an opportunity to redirect your client and to perhaps address some of the deficiencies in direct that you weren't able to get to in the time that you were given.

I certainly intend to allow each side to fully present their case, but *the limitations of this week have been I think largely self-created*.

And so I'm hopeful that with what will likely be significant time to prepare before the next court date, attorneys come with their questions prepared, *understanding the actual critical issues that the court is going to be deciding*, and *focus what little time they will be allowed on those issues* instead of tangential issues that have nothing to do with what the court is deciding.

(Emphasis added.) Syed objected to the trial judge's characterization of his use of trial time.

- 10 -

[COUNSEL FOR SYED:] The first day of trial was consumed by a reversal of what normally takes place in that [Tawish] questioned on direct the guardian ad litem, essentially.

So we've only had two days of trial as petitioners. That is my submission. And the interpreter issues, technical issues, the exhibit issues with [Tawish] certainly, I sure hope that [Y]our Honor is recognizing that this doesn't fall on myself or [Syed]. In part, surely, we can do better, surely I will acknowledge that, but those issues took up a lot of time aside from that. So I want to—I just want to want to make that comment.

THE COURT: All right. The comment is received. And I will now tell you what the court's recollection is, because I have had ample time to consider exactly how time has been used.

And I will acknowledge that some time has been wasted, unfortunately, due to some inefficiencies, *including a representation to the court about an interpreter's qualifications that clearly fell short of what the expectation would have been for that interpreter*.

But contrary to what you just stated, you actually began your case in chief after the afternoon recess on the first day of trial when you put your client on the stand. You did not have to wait until the second day of trial. That is not only my recollection, but it's my certainty after review of the transcript and preparing for each court day, because I actually do that.

Beyond that, I will recall that in each afternoon you've had the opportunity to question your client, and it wasn't, I think, until the final day of questioning your client when I informed you of just how much time you had left that the questioning I thought actually became on point, succinct, and focused in a way that I think is generally necessary for effective trial.

Finally I will simply say that it's the court's opinion that despite the failures of interpretation, *the fact is that the substance of the testimony you elicited from your witnesses, whom, after a substantial amount of time questioning them, the line of questioning was such that the court had to actually wonder, on the record*—something I rarely do, because I respect how difficult it is to be counsel; I'm not that far removed from being a trial counsel myself—but *I had to truly wonder, from the bench, whether or not these witnesses had ever been questioned by your office or if you had actually ever had a substantial conversation with your client about the content of their testimony, because it was so clearly irrelevant to the court*.

So, when I think about the fact that you've had two days to present, I also think about—well, two days plus the first day's afternoon recess time thereafter. I also remember that, frankly, failures of interpretation are not one of those two days, when I consider the two days of testimony from India was entirely wasted by questionable choices in calling those witnesses in the first place.

- 11 -

So that is the court's recollection of how time has been utilized thus far.

(Emphasis added.)

When trial resumed for the fifth day on May 29, Tawish's attorney continued her cross-examination of Syed for approximately 35 minutes after which Syed's counsel conducted redirect examination for roughly two hours. Tawish then completed a brief recross-examination that lasted around 15 minutes. The remainder of the day, about two hours, was spent on Tawish's direct examination by her counsel.

On the sixth and final day of trial, May 30, Tawish's counsel resumed her direct examination for roughly another one-and-a-half hours, followed by the beginning of Syed's cross-examination of Tawish just before the noon recess. In the afternoon, Syed continued his cross-examination of Tawish for another hour and 30 minutes, before Tawish's counsel conducted a limited redirect examination.

B. Enforcement of Agreed Time for Trial

The record here amply demonstrates that it was Syed's inefficient use of time that led to his request to extend trial that was ultimately denied. The trial judge repeatedly cautioned Syed that *he* was responsible for managing his own time, the witnesses he called were of limited probative value, and he should not attempt to relitigate issues related to discovery but, rather, direct his focus to other issues that the court was tasked with deciding. The trial judge also expressed concern about his own scheduling limitations several times throughout trial such that the parties were well aware of those additional considerations.

At oral argument before this court Tawish's counsel, who also represented her at trial, asserted, "[I]f I recall correctly, it was about six hours, six-and-a-half hours for direct, and the cross was about four hours. Versus a three-and-a-half hour direct for [Tawish] and a little over two hours" for Tawish's cross-examination.[2] Having conducted our own review of the time allocated during trial based on the report of proceedings, it is clear that Syed's counsel spent approximately seven hours and 30 minutes on the direct examination of Syed and around two-and-a-half hours on Tawish's cross-examination. By contrast, Tawish's direct examination was conducted in just under four hours, and Syed was cross-examined by Tawish's counsel for roughly four-and-a-half hours. Whether we proceed based on our own calculation of time or the estimate provided at oral argument before this court, Syed's direct examination and cross-examination of Tawish was generally equal to the time Tawish was allocated for her own direct and cross-examination of Syed; the disparity as to this portion of the presentation of testimony appears in how that total time was used.

More critically here, Syed used just over five hours of trial time over the course of two days for his direct examination of Mehmood; much of this time resulted from not only issues with the accuracy of the interpreter, but Syed's counsel's continued use of compound questions despite the court's explicit admonitions to simplify her presentation. The court specifically directed that her questions "really should be subject, verb, interrogatory. . . as simple as possible to

---

[2] Wash. Ct. of Appeal oral arg., *In re Marriage of Naqvi*, No. 87150-1-I (Jan. 7, 2026), at 9 min., 50 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026011131/.

get the point across and certainly no compounds." Further, the trial court also had to repeatedly remind Syed to focus on issues that it would actually decide. Again, when Syed's counsel took issue with the court's characterization of how she had used her time examining Mehmood and Wasi, the judge responded,

> [I]t's the court's opinion that despite the failures of interpretation, *the fact is that the substance of the testimony you elicited from your witnesses, whom, after a substantial amount of time questioning them, the line of questioning was such that the court had to actually wonder, on the record*—something I rarely do, because I respect how difficult it is to be counsel; I'm not that far removed from being a trial counsel myself—but *I had to truly wonder, from the bench, whether or not these witnesses had ever been questioned by your office or if you had actually ever had a substantial conversation with your client about the content of their testimony, because it was so clearly irrelevant to the court.*

(Emphasis added.) When the additional time for Wasi's examination is included in overall time calculations, just under an hour on the third day of trial, the discrepancy in the time used by the parties for the presentation of testimony becomes even more apparent. Tawish examined the GAL for about one hour and Syed for approximately one hour and 20 minutes. Tawish presented the testimony of the children's nanny and the immigration attorney over a total of 45 minutes and Syed spent roughly a combined 30 minutes cross-examining them. In all, Syed was able to pursue his examination of the various witnesses for approximately eight hours compared to Tawish, who only used about two hours. Syed simply fails to persuasively explain why such an allocation of trial time would result in an injustice that requires reversal.

More to the point of Syed's assignment of error on this issue, even if the trial court did place limitations on his cross-examination of Tawish, it did so only

- 14 -

after repeatedly warning Syed's counsel that she was not making wise use of the time allotted for the presentation of his case, which is a factor under *Stocker*. *See* 33 Wn. App. 2d at 361. The parties were informed of limitations on the court's time at the start of trial after explicit inquiry by the court and argument by the parties regarding their concerns, and as described, *supra*, the trial judge kept track of time during trial. In *Stocker*, we explained that a key factor in our review is whether the trial court considered the parties' own estimates of time needed for trial, announced time limits sufficiently in advance of trial, and tracked "time during trial to avoid unfair surprise." *Id*. All of these steps were implemented here. Syed was fully apprised of the time available to him, and the time for trial was expanded beyond what was initially planned based on his request. While Syed objected to these limitations during trial, another factor discussed in *Stocker, see id.*, this occurred only after repeated warning from the trial judge that he was not using his time effectively and the impact his litigation strategy was having on the schedule of the trial as a whole. Further, although *Stocker* allows for a grant of additional time due to unforeseen circumstances, *id.*, the issue with the interpreters here was not unanticipated. The trial court openly discussed the use of interpreters and explained that it would necessarily extend the length of trial; delays resulting from interpretation were entirely foreseeable. This is particularly true where, despite the trial court's identification that it made interpretation unnecessarily complicated, Syed's counsel continued the use of compound questions. The record establishes the judge's repeated admonitions to counsel to "simplify her questions." He explicitly instructed that the questions posed "really should be subject, verb,

interrogatory . . . as simple as possible to get the point across and certainly no compounds." The final *Stocker* factor is particularly relevant here; "whether there is a reasonable inference from the record that the aggrieved party's improvident use of time caused the purported need for additional time." *Id*. The trial court's imposition of limits on Syed's cross-examination of Tawish occurred only after reiterated directives to focus on the "actual critical issues that the court [was] going to be deciding" and its observation that Syed was largely responsible for the delays that led to the need for enforcement of time limitations on him. In fact, the trial court ultimately stated that two mornings had been "entirely wasted" as a result of Syed's mismanagement of trial time.

The cases cited in *Stocker* establish that a party who does not make effective use of trial time, particularly after having been warned about that precise issue by the judge, will not prevail on a subsequent claim on appeal of improper time limitations. This is particularly true considering the abuse of discretion standard we apply to such an assignment of error. As we observed in *Stocker*,

> Our Supreme Court has explained that "[t]he trial court is generally in the best position to perceive and structure its own proceedings" and, therefore, "has broad discretion to make a variety of trial management decisions, [including, pursuant to the plain language of ER 611(a),] the mode and order of. . .presenting evidence."

33 Wn. App. 2d at 358 (some alteration in original) (internal quotations marks omitted) (quoting *State v. Dye*, 178 Wn.2d 541, 547, 309 P.3d 1192 (2013). Syed fails to demonstrate how, on this record and in light of the *Stocker* factors, the trial court here abused the broad discretion conferred on it by our evidence rules and express holding of our Supreme Court. It was Syed's own poor strategic choices

to attempt to relitigate matters already resolved by the trial court and present witness testimony through interpreters that went well beyond the issues to be decided by the trial court that restricted his ability to present his case in as full a manner as he would have liked. The trial court did not err as to its management of time at trial.

II.     Division of Property

Syed presents several assignments of error based on the trial court's division of property between the parties. Specifically, he contends the trial court failed to properly consider Tawish's purported waste of community funds in its overall determination of a fair and equitable distribution, erroneously declined to order reappraisal of the family home and allowed Tawish time to arrange for its refinance, and ultimately ordered a division of property that left him with "significantly lesser [sic] financial resources."

We review the trial court's division of property in a dissolution for a manifest abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable ground or for untenable reasons.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). "In a proceeding for dissolution of the marriage . . . the courts shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable." RCW 26.09.080. The statute further requires the trial court to consider the following non-exclusive factors:

(1)     The nature and extent of the community property;

(2)     The nature and extent of the separate property;

(3)     the duration of the marriage . . .; and

(4)     The economic circumstances of each spouse . . . at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live there for reasonable periods to a spouse . . . with whom the children reside the majority of the time.

*Id.* With this framework in mind, we turn to Syed's individual challenges.

A.     Family Home

Syed claims that the trial court erred when it granted Tawish a period of time to refinance the home if she chose to remain in it and separately declined to order reappraisal of the home. As a preliminary matter, Tawish asserts that issues relating to the family home are now moot because she has refinanced it. In his reply brief, Syed counters that this court can grant relief, in the form of a new appraisal, such that the matter is not moot. However, Syed's position here rests on his presumption that a new appraisal would be higher and, therefore, beneficial to both parties.

An issue is moot if we can no longer provide effective relief. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). Generally, if an issue is moot, we will not review it unless "it presents issue of continuing and substantial public interest." *Id.*

Syed's assignment of error regarding the trial court's ruling to grant Tawish time to refinance the family home is moot because Tawish has already done so. Syed does not identify any continuing and substantial public interest that compels

our review of this issue despite its mootness. Instead, he simply asserts that he would still benefit from a reappraisal of the home because, if ordered on remand, he would receive an increased distribution proportional to his share of equity in the home. However, that aspect of his challenge is entirely speculative; Syed did not offer any evidence in the trial court in support of his contention that a new appraisal would necessarily be higher than the appraised value accepted at trial. Thus, even if the trial court were to order a new appraisal, there is no guarantee that Syed would benefit. Because Syed does not establish an exception to the mootness doctrine or provide anything beyond speculation in support of this assignment of error, we decline to reach the merits.

  B.  Real Property in India

  Syed next avers that the trial court erred when it failed to account for money that Tawish purportedly spent on real property in India. Because this contention is plainly contradicted by the report of proceedings from trial, we disagree.

  While he expressly avers in his opening brief that the "entire [amount] was spent on the two properties Tawish purchased in India with community funds *without Syed's agreement*" and it was not "considered when dividing property," our review of the record demonstrates that not only was the expenditure considered by the trial court, but Syed also admitted his contemporaneous knowledge of the purchase in question. (Emphasis added.) At trial, Syed specifically testified that he was aware of the transaction he now challenges and opposed it. Syed also stated,

> So preceding this property there have been international transactions made by [Tawish] from her Wells Fargo account for a period of six months and other transactions what [sic] she did. She closed her [account] and—sorry, she closed her . . . account and one more account, which was a joint account when she opened two accounts and moved money into that Wells Fargo account, which both of those four accounts I provided statements to the [c]ourt from that transaction. All the money was moved to India and those statements are there in the court to see the transaction recording [sic]. And then all the, about $116,000 from transfer the joint account to buy this property. And there is a court order from 10-25-2022, ordering [Tawish] to provide accounting of that money, so all these funds that understood were used to buy this property, and there is another property that was used—was all from the community funds.

He further testified that these transactions could be proved by Wells Fargo bank statements he had obtained and were later admitted as exhibit 26 during his cross-examination of Tawish. Syed makes additional factual assertions on this issue in his briefing, but they rely on exhibits 21, 27, and 65, which he concedes were not admitted at trial.[3] He contends his counsel would have been able to corroborate his testimony with these exhibits:

> [C]ounsel then not only would have been able to note the $124,512.00 Tawish transferred to her account in India through several payments made between June 2021 and January 2022 titled "Xoom" or "Wise" "International Transfer to Tawish Rizvi," but also how Tawish repeatedly refused to provide supplementary discovery responses regarding financial accounts, showing she was hiding these transfers.

---

[3] After acknowledging that exhibits 21, 27, and 65 were not admitted at trial and, therefore, not transmitted to this court as a part of the record on appeal, Syed notes he appended them to his opening brief, in plain violation of RAP 10.3(a)(8), without submitting a motion to supplement the record or otherwise seeking permission of this court as required by RAP 9.11(a). As such, we decline his request to consider these materials that are so plainly outside the scope of the record on appeal.

However, this argument is unavailing as we do not consider evidence that was not before the trial court. *Morgan v. Briney*, 200 Wn. App. 380, 394, 403 P.3d 86 (2017).

Tawish testified that she had spent only $68,000 on the property in India, conceded that she had used community funds to do so, but also explained that the funds originated from her own savings account where her salary was deposited, and this amount was reflected in the division of property she proposed in her dissolution spreadsheet, which was admitted as exhibit 407. Tawish also explicitly denied that she had spent the amount that Syed alleged and further stated that she released her interest in the property in order to avoid spending more money on it.

When the trial court issued its oral ruling after trial, Syed's counsel asked for clarification of certain findings related to Tawish's movement of funds to purchase the property in India. The trial judge replied,

> In terms of the movement of funds, first, I found [Syed]'s movement of funds and failure to be able to account for large amounts of funds significantly more concerning than [Tawish]'s, and so that certainly played into my ruling as to who ultimately was responsible for intransigence in this matter.
> And, second, I found that the accounting that was proposed by [Tawish], although at the end of the day, there was a significant amount of allegations, ultimately, I think not truly substantiated with regard to payments that were made for the property in India. The accounting proposed by [Tawish] also, I think, essentially allowed for an increased amount of compensation to [Syed] even supposing that some element of those allegations were true.
> So ultimately, when considering the two proposals that were before me as argued and as documented, I certainly found one to be more credible than the other, and I ruled accordingly.

While Syed clearly disagrees with the trial court's ruling on this matter, he has not established that it was an abuse of discretion. We decline to consider any exhibits that were not admitted, and therefore properly before the trial court, or the unsupported narrative he offers in his opening brief. Our conclusion here rests solely on the exhibits properly admitted at trial and the trial court's credibility determination as to the parties' conflicting testimony. The trial court found Tawish's testimony regarding the amount of funds used on the property to be more credible, and the record demonstrates that it did, in fact, consider that amount as the judge expressly attributed that amount to her in its overall distribution of the couple's property. Syed's contentions on this issue fail.

C.    Retirement Accounts

Next, Syed avers that "the trial [c]ourt erred not only by not making findings as to the values of the parties' 401ks [sic], but also by seemingly not considering the value of Tawish's much more valuable 401k [sic] at all, and certainly not in an amount as supported by the evidence." Tawish responds generally that there was substantial evidence to support the trial court's findings regarding the retirement accounts but does not specifically identify that evidence. We agree with Syed.

The trial judge explicitly stated that he was awarding each party their own retirement accounts due to the difficulties that would arise if he were to divide them. At the presentation of the trial court's oral ruling after trial, the judge explained,

> I'm declaring that I have divided the community property fairly, and
> that each party will retain their own 401(k) plan as a result, and that
> that accounting is contemplated in the final division of property. And
> so the [c]ourt knows that more damage would be done by attempting
> to extricate funds from those 401(k) plans, and other funds in the

- 22 -

ultimate allocation made up for the fact that the 401(k)s themselves might not be directly equitable.

The trial judge acknowledged that the allocation of the 401(k) accounts "might not be directly equitable" if considered in isolation but explained that he would achieve the proper equitable balance overall through the division and assignment of other assets.

However, the trial judge's calculations, intended to effect division of the assets that awarded 55% to Tawish and 45% to Syed, did not accurately reflect the value that the court had adopted for Tawish's Microsoft 401(k). Exhibit 386, statement details from this account, were admitted during trial as evidence of its value and apparently accepted by the court. The value of the account was accounted for in exhibit 407, Tawish's spreadsheet that illustrated her proposed division of assets that was ultimately adopted by the trial court. However, exhibit 407 incorrectly lists the value of this 401(k) account as $1,744 while exhibit 386 values the account as fluctuating between $179,365.11 on February 26, 2024 and $183,447.01 on March 31, 2024. This significant discrepancy results in an award of an additional $177,621.11 to $181,703.01 to Tawish, depending on which date of valuation is used. The consequence of this error is that the trial court's division of assets departs from its stated intent. Also critical here is that the court, when it accepted exhibit 386 as an accurate reflection of the true value of Tawish's 401(k) account at two distinct points in time, failed to enter any finding that fixed the amount of that asset at the time of the dissolution and property division. The trial court's inclusion of a figure that is inconsistent with the only valuation evidence presented for this account leads to a division that is clearly inconsistent with the

allocation the trial court concluded was reasonable and expressly intended to implement.

As to Syed's own 401(k) account, the record is similarly devoid of any point in time valuation as would be necessary in order to effectuate the trial court's intended property distribution. Exhibit 40, admitted at trial, was Syed's financial declaration and included his own valuation of his "retirement accounts" at $64,424.38. However, exhibit 407 values Syed's Telus 401(k) account at $56,726. Exhibits 102 and 341, which both contained Syed's pay statements from Telus, were the only other exhibits admitted at trial regarding his 401(k) account, but neither shows the *value* of the account; they only document Syed's contributions to the account between January 2023 to May 2023. Again, the trial court seems to have credited the value of Syed's Telus 401(k) account provided in exhibit 407, as it did with regard to Tawish's Microsoft 401(k) account, but the discrepancy between the values contained in exhibits 40 and 407 frustrates our ability to conduct a proper review.

Accordingly, we remand for the trial court to resolve the discrepancy between the figures included in exhibits 386 and 407 regarding Tawish's Microsoft 401(k) account and between exhibits 40 and 407 as to Syed's Telus 401(k) account, for entry of the necessary findings regarding valuation of each parties' 401(k) accounts, and if needed, reconsideration of the overall property division based on these additional figures.

III.    Spousal Support

Syed next contends that the court "abused its discretion by failing to consider all of the factors for awarding spousal support as any reasonable person could only conclude that spousal support was necessary."  Tawish counters that Syed's "request for spousal support is also meritless."

We review the trial court's denial of spousal support for abuse of discretion. *See In re Marriage of Anthony*, 9 Wn. App. 2d 555, 563, 446 P.3d 635 (2019).  The trial court has broad discretion and its "disposition will not be overturned on appeal absent a showing of manifest abuse of discretion."  *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).  "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'"  *In re Marriage of Wilcox*, 3 Wn.3d 507, 517, 553 P.3d 614 (2024) (quoting *Anthony*, 9 Wn. App. 2d at 563).  "Spousal support is governed by RCW 26.09.090, which provides that a court 'may' grant a maintenance order for either spouse 'in such amounts and for such periods of time as the court deems just, without regard to misconduct.'"  *In re Marriage of Kile*, 186 Wn. App. 864, 886, 347 P.3d 894 (2015) (quoting RCW 26.09.090).  The trial court's analysis is informed by the following non-exclusive list of factors provided in RCW 26.09.090(1):

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to [them], and [their] ability to meet [their] needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment

appropriate to [their] skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage . . .;

(d) The duration of the marriage . . .;

(e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and

(f) The ability of the spouse . . . from whom maintenance is sought to meet [their] needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

"Ultimately, the court's paramount concern must be the parties' economic conditions postdissolution." *Wilcox*, 3 Wn.3d at 520-21.

Although the trial court did not explicitly engage with each of the statutory factors on the record, it is not required to do so. *See In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004). However, the only reference to spousal support in the final orders is a single sentence in the final divorce order that states, "No spousal support is ordered," and during its presentation of its oral ruling, the trial court's only statement on this matter was, "Spousal support is not awarded." In the absence of findings or other explanation of the trial court's reasoning, we are unable to determine whether its decision to deny Syed's request reflects an abuse of discretion. Accordingly, we remand for entry of findings.

IV.    Intransigence and Attorney Fees

Syed next avers that the trial court abused its discretion when it ordered him to pay a portion of Tawish's attorney fees after finding him intransigent. He contends that the trial court's findings were not supported by substantial evidence and therefore cannot support the fee award. He further asserts that Tawish should have been found intransigent and he should have been awarded fees based, in part, on her purported discovery violations. Tawish responds that the "trial court

did not abuse its broad discretion in finding Syed was responsible for a small portion of Tawish's attorney fees." Tawish is correct.

We review the trial court's award of attorney fees for abuse of discretion. *In re Marriage of Obaidi*, 154 Wn. App. 609, 617, 226 P.3d 787 (2010). "Intransigence is a basis for attorney fees in dissolution proceedings." *In re Marriage of Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). "'Awards of attorney fees based upon the intransigence of one party have been granted when the party engaged in foot-dragging and obstruction . . . or simply when one party made the trial unduly difficult and increased legal costs by [their] actions.'" *In re Marriage of Katare*, 175 Wn.2d 23, 42, 283 P.3d 546, (2012) (some alteration in original) (internal quotation marks omitted) (quoting *In re Marriage of Greenlee,* 65 Wn. App. 703, 708, 829 P.2d 1120 (1992)). In addition to those examples of intransigence quoted in *Katare*, this court, in *Greenlee,* included circumstances "when a party filed repeated motions which were unnecessary." 65 Wn. App. at 708.

A. Trial Court Finding of Syed's Intransigence

In March 2024, Syed filed a motion to continue trial and amend the case schedule so he could continue to pursue discovery. Tawish responded soon after and requested that the trial court deny the motion and grant her attorney fees for having to respond because the "motion was not filed in good faith." Later that week, the trial court denied Syed's motion to continue and reserved Tawish's fee request for trial. Then, in April 2024, Tawish filed a motion to set the matter for trial in early May based, in part, on her assertion that Syed's counsel had

contributed to significant delays. A supporting declaration from Tawish's counsel stated that the intransigence of Syed's counsel had "unnecessarily increased the cost of this litigation" which justified an award of attorney fees to Tawish. The next day, the trial court entered an order that continued the trial to July, but a week later, on April 26, the trial court changed course, reset the trial for May 2024, and reserved the question of any potential fee award for trial.[4]

At the presentation of its oral ruling on August 1, the trial court explained its findings regarding intransigence. The judge noted that he found "[Tawish]'s accounting that [Syed] had been recalcitrant to be credible [and] also found that there was an extension of time needed for trial that resulted from baseless argument from [Syed]." The final divorce order included an award of $10,000 in attorney fees to Tawish based on Syed's intransigence that included "the reserved fee contemplated by the [c]ourt's order of April 26, 2024."

As a preliminary matter, Syed's argument on this issue simply reflects disagreement with the trial court's determination of various matters during trial. This is insufficient to demonstrate reversable error. For example, rather than identify what necessary evidence was missing such that the judge's findings are not properly supported, he attributes the trial delay to the interpreter's deficiencies and his counsel's trial schedule; effectively rearguing his position in the trial court. However, the trial court explicitly indicated that the finding was premised, in part, on the delays that Syed and his counsel had caused with his pretrial litigation of discovery. When the trial court found Syed intransigence, its finding was further

---

[4] While the second page of the order as transmitted to this court is illegible, its order on the final page is clear.

supported by Syed's continued pursuit of arguments related to discovery during trial, even though his motion to compel had been denied and he had been instructed to refrain from attempting to relitigate it. Additionally, the court stated that Syed had contributed to the length of trial by continuing to pursue baseless arguments, despite repeated admonitions from the court. Syed fails to explain why these facts of trial did not render it "unduly difficult" or how the "increased legal costs" were not the result of his actions in repeated attempts to relitigate issues through the filing of "repeated motions which were unnecessary." *See Greenlee*, 65 Wn. App. at 708. Because he has not demonstrated reversable error under the controlling legal standard, we will not disturb the award of attorney fees to Tawish based on Syed's intransigence.

B.     Trial Court Rejection of Intransigence Finding as to Tawish

Syed next asserts that the trial court further erred when it rejected his attorney's request to also find Tawish intransigent. At the final hearing, Syed requested that the trial court explain why it declined to so find, particularly as to Tawish's "moving of money." The trial judge stated,

> I will be completely forthright, although this may be somewhat damaging to feelings. But generally speaking, I did not find a record of intransigence from [Tawish], and we, of course, had, I think, a fairly lengthy discussion about the fact that the motion to compel discovery, for example, was not ultimately a showing of intransigence because nothing ultimately came of that motion, and the motion was not to be relitigated at trial. And so I did not find that there was substantial documentation of intransigence on [Tawish]'s part, based on the record of trial.
>     In terms of the movement of funds, first, I found [Syed]'s movement of funds and failure to be able to account for large amounts of funds significantly more concerning than [Tawish]'s, and

so that certainly play into my ruling as to who ultimately was responsible for intransigence in this matter.

And, second, I found that the accounting that was proposed by [Tawish], although at the end of the day, there was a significant amount of allegations, ultimately, I think not truly substantiated with regard to payments that were made for the property in India. The accounting proposed by [Tawish] also, I think, essentially allowed for an increased amount of compensation to [Syed], even supposing that some element of those allegations were true.

So ultimately, when considering the two proposals that were before me as argued and as documented, I certainly found one to be more credible than the other, and I ruled accordingly.

Critically here, both the trial court's ruling on Syed's request for a finding of intransigence as to Tawish and its finding of Syed's intransigence set out in Section IV.A, *supra*, rely at least in part on credibility findings. We will not disturb the credibility determinations of the trial court. *In re Marriage of DeVogel*, 22 Wn. App. 2d 39, 53, 509 P.3d 832 (2022). As with his contentions regarding the finding that he was intransigent, Syed merely attempts to relitigate arguments on this issue that were already rejected by the trial court and does not demonstrate how the trial court abused its discretion here. His challenge on this issue fails.

V.    Child Support Order

Despite his failure to designate the child support order in his notice of appeal, or file an amended notice to include it, Syed avers that the we should nonetheless review the order because it "prejudicially affects the order denying spousal support." He avers this is so because the trial court imputed his income for purposes of its child support calculation and denied him a downward deviation of his child support obligation. Syed presumes, without evidence, that this resulted

in the trial court's purportedly erroneous denial of his request for spousal support. We disagree and decline review based on his noncompliance with the RAPs.

Absent certain exceptions not present here, we will only review "the decision or parts of the decision designated in the notice of appeal." RAP 2.4(a). We will review an order that is not designated in the notice of appeal *only* if "the order or ruling prejudicially affects the decision designated in the notice" and "the order is entered, or the ruling is made, before the appellate court accepts review." RAP 2.4(b). "Our Supreme Court has interpreted the term 'prejudicially affects' to turn on whether the order designated in the notice of appeal *would have occurred absent the other order*." *Yi v. Kroger Co.*, 2 Wn. App. 2d 395, 407, 409 P.3d 1191 (2018) (emphasis added); *see also In re Dependency of Brown*, 149 Wn.2d 836, 840 n.2, 72 P.3d 757 (2003) ("The dependency order 'prejudicially affected' the dispositional order, since the dispositional order could not have been entered without a finding of dependency."). "'The issues in the two orders must be so entwined that to resolve the order appealed, the court must consider the order not appealed.'" *Yi*, 2 Wn. App. 2d at 407 (internal quotation marks omitted) (quoting *In re Ests. of Foster*, 165 Wn. App. 33, 45, 268 P.3d 945 (2011)).

Crucially, the final dissolution order does not rely on the child support order such that it would not have occurred in the absence of the child support order. While both rely, to varying degrees, on the same underlying facts regarding the state of the parties' respective finances, it does not follow that we cannot consider the final divorce order without reviewing the child support order. For example, we could consider the propriety of the trial court's decision regarding property division

without relying on its ruling regarding child support obligations, despite the fact that both orders consider the equities and parties' financial circumstances. These orders are not so intertwined as to be inseparable, and Syed's failure to designate the child support order for appeal is fatal to this claim.

VI.    Reimbursement for Childcare Expenses

Syed contends in his final assignment of error that the trial court erred when it determined that Tawish was entitled to repayment for childcare expenses. He asserts that he should be excused from any obligation to reimburse her because she failed to comply with portions of the temporary child support order. We disagree.

As a preliminary matter, Syed did not include the temporary child support order in the record transmitted to this court on appeal. As the party seeking review, he is responsible for the designation of the record on appeal. RAP 9.6. This fundamental failure precludes our review of the merits on this issue. Procedural barrier aside, however, we note that the very authority on which Syed relies for this claim explicitly rebuts his position. RCW 26.09.184(7) explicitly mandates,

> *If a parent fails to comply with a provision of a parenting plan or a child support order, the other parent's obligations under the parenting plan or the child support order are not affected*. Failure to comply with a provision in a parenting plan or a child support order may result in a finding of contempt of court, under RCW 26.09.160.

(Emphasis added.) Even if we were to accept that Tawish failed to comply with the temporary child support order, the statute expressly dictates that such failure would not excuse Syed from his own obligations. Syed has failed to establish entitlement to relief on this issue.

VII.    Attorney Fees on Appeal

Both parties seek an award of attorney fees on appeal.  Syed presents his request pursuant to RAP 14.2 and RCW 26.09.140 or, alternatively, Tawish's purported intransigence.  Tawish contends that we should conclude that Syed's appeal was frivolous under RAP 18.9 and award fees on that basis but also offers RCW 26.09.140 and RAP 18.1 as further grounds.

We may order fees and costs on appeal if there is applicable law authorizing the award and the party making the request devotes a portion of its brief to the request.  RAP 18.1(a); (b).  We may also order a party who has filed a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply."  RAP 18.9(a).  "An appeal is frivolous is there are no debatable issues upon which reasonable minds could differ." *Obaidi*, 154 Wn. App. at 618.  RCW 26.09.140, part of the chapter governing dissolutions, grants us discretion to "order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs" and requires us to consider "the financial resources of both parties" before entering such an order.

First, as explained in Part IV, *supra*, the trial court found that Tawish was not intransigent, and Syed has failed to demonstrate any intransigence on appeal.  Accordingly, he has not demonstrated entitlement to an award of attorney fees on that basis.  Second, as to Tawish's primary basis for her request, Syed's appeal was not entirely frivolous as he prevails on his challenge regarding the trial court's failure to include an accurate valuation of Tawish's 401(k) account in its division of

property. Finally, after considering the equities, we exercise our discretion to decline a fee award to either party.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion, including entry of the necessary findings regarding the valuation of the parties' 401(k) accounts and the trial court's denial of an award of spousal support to Syed, and reconsideration of the division of property as needed.

WE CONCUR: